IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALISON MICHELE SANDERS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 2:13-cv-2090-TMP |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

### I.   Introduction

The plaintiff, Alison Michele Sanders, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Sanders timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Sanders was 41 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education.   (Tr. at 40).   Her past work

experiences include employment as a secretary, pharmacy technician, dispute specialist with a credit union, accounts payable clerk, and a manager of a movie rental store. (Tr. at 75-79). Ms. Sanders claims that she became disabled on October 5, 2009, due to bipolar disorder, low back pain, migraines, kidney problems, and a stroke that impaired her memory.[1] (Tr. at 190).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R.

---

[1] The Plaintiff also has listed "manic depression" as a disorder, but it appears to be treated synonymously with bipolar disorder in her medical records.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, she will be found disabled without further consideration.  *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. *Id.*  The burden of

demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Sanders has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision.  (Tr. at 42).  He determined that Ms. Sanders has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 24).  According to the ALJ, Plaintiff's history of kidney stones, history of occipital neuralgia, migraines, degenerative disc disease,[2] bipolar disorder, generalized anxiety disorder, and panic disorder are considered "severe" based on the requirements set forth in the regulations.  (*Id.*)  He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 30-33).  The ALJ further determined that Ms. Sanders has the "non-severe" impairments of hypertension and an old lacunar infarct.  The ALJ did not find Ms. Sanders'

---

[2] The ALJ specifically described her spinal disc problems as "multilevel cervical degenerative disc disease, severe L5-S1 degenerative disc disease, associated severe left L5-S1 neuroforaminal and lateral recess stenosis probably causing left S1 radiculopathy, multilevel lumbar degenerative disc disease, lumbar spondylosis and facet arthrosis."  (Tr. at 24).

4

allegations to be totally credible (Tr. at 35), and he determined that the plaintiff has the residual functional capacity to perform light work with only occasional bending and stooping, no climbing, no work at unrestricted heights, and only simple repetitive, non-complex tasks. (Tr. at 33).

According to the ALJ, Ms. Sanders is unable to perform any of her past relevant work, she was a "younger individual" at the date of alleged onset, she has a high school education, and she is able to communicate in English, as those terms are defined by the regulations. (Tr. at 40). He determined that "[t]ransferability of job skills is not material to the determination of disability" in this case. (*Id*.) The ALJ found that Ms. Sanders has the residual functional capacity to perform a significant range of light work, and that, even though Plaintiff cannot perform the full range of light work, there are a significant number of jobs in the national economy that she is capable of performing, such as blood donor unit assistant, information clerk, and fund raiser II. (Tr. at 41). The ALJ concluded his findings by stating that Plaintiff is "not disabled" under the Social Security Act. (Tr. at 42).

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of

claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Sanders alleges as the only basis for reversal of the ALJ's decision that the ALJ's mental RFC was not based on substantial evidence.  (Doc. 13). Specifically, the plaintiff argues that the ALJ failed to give proper weight to the consultative psychologist's opinion.  (Doc. 13, pp. 6-10).  The plaintiff further asserts that the ALJ had a duty to more fully develop the record by calling for additional review by a medical expert.  (Doc. 13, p. 10).  Finally, the plaintiff urges that the ALJ's determination is inconsistent with his own assessment of the plaintiff's impairments.  (Doc. 13, p. 11).  Plaintiff does not challenge the ALJ's assessment of her physical RFC.

#### A. Consultative Examiner's Assessment

The plaintiff asserts that the ALJ failed to give proper weight to the opinion of the consultative psychologist, Dr. Heath Patterson.  Dr. Patterson evaluated Ms. Sanders on January 26, 2011.  Dr. Patterson noted that Ms. Sanders had an

"extensive history of full-time employment in a number of arenas," and that her employment as an office worker for a security company ended in 2008 "when psychiatric decompensation interfered with her ability to complete routine work duties." (Tr. at 756). Dr. Patterson further noted that Ms. Sanders had a history of depression, and had received mental health treatment since she was in her 20s. (Tr. at 756-57). He stated that she reported that she had taken psychoactive medications for many years and found them "helpful." (*Id.*) Dr. Patterson found Ms. Sanders to be "fully oriented to all spheres" with "intact" attention and concentration, but with "marked slowing." He further found her abstract reasoning skills to be "within expected limits," and her judgment to be "fair." (Tr. at 757). Her fund of information was within "expected parameters;" her long-term memory "fair" and her short term memory better; her thought process was "logical, coherent, and goal-directed." (Tr. at 758). He next reported that Ms. Sanders reported experiencing "hallucinations/perceptual distortions," including "unknown voices making derogatory comments about her and instructing her to harm herself," but that she did not act on those thoughts. (Tr. at 758). Dr. Patterson summarized Ms. Sanders' condition as having "adequate judgment to make acceptable work decisions" in relatively simple, unskilled jobs. (*Id.*) He opined that Plaintiff had no "cognitive limitations that would preclude obtaining steady employment," but he

8

also noted that her "psychotic disturbances," such as hallucinations, depression, and anxiety, cause "marked impairment in daily functioning" and "could preclude ... gainful employment."  (Tr. at 759).

In determining the weight to be given to a medical opinion, and ALJ must consider factors that include the examining relationship, the treatment relationship, the evidence that supports the opinion, and the degree to which the opinion is consistent with other evidence.  20 C.F.R. § 404.1527(c).  Different types of medical sources are entitled to differing weights.  The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight.  A non-treating physician or psychologist, who has examined the patient but does not treat the patient, is entitled to less weight.  The least weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient.  20 C.F.R. § 404.1502.  Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion.  *See, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 418-19 (11th Cir. 2008).  Even the opinion of a treating physician can be disregarded where "good cause" is shown. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the

9

examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

At issue in this case is the opinion of a consultative psychologist, who examined the plaintiff on one occasion, but had no ongoing relationship with her and who did not treat her. He based many of his conclusions on plaintiff's own descriptions of her condition. His opinion is entitled to weight only to the extent that it is bolstered by the evidence, is not contrary to other medical evidence, does not contradict the opinions of treating physicians, and to the extent that it is not conclusory or inconsistent with his own findings.

In this case, Dr. Patterson reached a conclusion – that her hallucinations "could preclude" her from working – that is both inconsistent with the opinions of all of her treating physicians, and inconsistent with his more specific observations and diagnoses of her conditions. The ALJ noted that Dr. Patterson's opinion regarding the severity of Ms. Sander's depression was not "consistent with the remainder of his report, or with the remainder of the medical records." (Tr. at 38). None of Ms. Sanders treating physicians has opined that Ms. Sanders' mental conditions are disabling, despite the fact that she has been treated for depression, anxiety, and bipolar disease for many years. To the contrary, Ms. Sanders responded well to the medications prescribed to her through 2007 by Dr. Siddiqui. She stopped seeing a psychiatrist after 2007, even though she was given a referral to a psychiatrist by Dr. Lott in 2011. In May of 2011, Ms. Sanders reported that her anxiety was "moderate," "intermittent," and "relieved by medication." She denied suicidal or homicidal ideations. (Tr. at 905). She also described her depression as moderate and intermittent, and said it also was relieved by medication. (Tr. at 906). Her bipolar disorder was assessed at that time as "stable." (*Id.*) At a doctor's visit in August of 2011, two years after the alleged onset date, Dr. Khatri recorded that Ms. Sanders' memory was intact, and her psychiatric assessment was normal, in spite of anxiety. (Tr. at 903). Dr. Marshall, a treating physician, did note in October 2011

11

that Ms. Sanders' bipolar disease was poorly controlled, but treated her condition by increasing her dosage of Depakote. (Tr. at 897). In January of 2012, Dr. Marshall reported that Ms. Sanders complained of being "very depressed" with suicidal ideations. (Tr. at 890). She also noted, however, that while Ms. Sanders presented with a cane, she left without it and was walking "with a normal gait" until she was reminded that she left her cane behind and her "gait changed and she began walking slightly hunched forward and with a mild limp." (Tr. at 890). None of the records of her treating physicians during the time since her onset date mentions hallucinations or hearing voices.

Ms. Sanders' own descriptions of her daily activities, while limited, also do not support the conclusion that she would be unable to work because of mental disabilities. She reports that she is able to do laundry, help her children, and do some cooking and shopping. Although she has suffered from depression, anxiety, and bipolar disease for well over a decade, she did not stop working until October of 2009. She testified at the hearing that she stopped because "[t]he company closed." (Tr. at 75). The ALJ relied heavily upon the assessment of Dr. Lott, a treating physician, who found that Ms. Sanders' depression and anxiety were only "moderate," when he saw her *after* Dr. Patterson's evaluation. (Tr. at 39).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c). In this case, the ALJ carefully reviewed the treating physician's records, and heeded the medical opinions therein. The ALJ clearly articulated "good cause" for the limited weight he gave to Dr. Patterson's assessment as a consultative examiner; therefore, the ALJ did not commit reversible error.

### B. Duty to More Fully Develop the Record

While plaintiff suggests that the ALJ had a duty to re-contact Dr. Patterson for "clarification," such a duty arises only where the evidence is insufficient to make a disability decision. *Shaw v. Astrue*, 392 Fed. App'x 684, 688-89 (11th Cir. 2008).

13

The regulations pertaining to consultative examinations require the ALJ to re-contact a consultative examiner only if the examiner's report is "inadequate" or "incomplete." *See* 20 C.F.R. § 404.1519p(b). It is clear that Dr. Patterson's evaluation was neither "inadequate" nor "incomplete," and therefore clarification was not needed. Instead, the ALJ found that the internal inconsistencies in the report, and the inconsistencies with virtually all of the treating physician's records, rendered some of Dr. Patterson's conclusions to be entitled to little or no weight. The ALJ's duty is simply to develop a full and fair record. *Couch v. Astrue*, 267 Fed. App'x 853 (11th Cir. 2008). An ALJ is not required to obtain additional evidence or seek clarification where the record is sufficient to support a decision regarding disability. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). The ALJ did develop a complete medical record for the 12 months preceding the filing of Ms. Sanders' application, and then assessed and properly weighed the evidence from both treating physicians, the consultative examiner, and all other sources. He also viewed Ms. Sanders' medical condition as a whole, and articulated specific reasons for giving no weight to the Dr. Patterson's conclusory statement that Ms. Sanders' mental illnesses "could preclude" employment.

## IV. Conclusion

The ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that Ms. Sanders' conditions did not cause disabling limitations and instead shows that she could perform some work.

Upon review of the administrative record, and considering all of Ms. Sanders' arguments, the Commissioner's decision is due to be and hereby is AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DATED the 19th day of March, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE